THE FIRST NATIONAL BANK OF CLINTON N. J.,

*v.*

GEORGE O. CUMMINS et al.

WILLIAM H. WATSON, receiver,

*v.*

GEORGE O. CUMMINS et al.

1. A son, knowing his father's financial embarrassments, and taking a conveyance of the title for all his father's real estate, only giving back therefor a mortgage, without a bond, for $2,047.62 and a check for $200, the father at the same time surrendering a note against the son for $200, cannot hold the real estate against the creditors of his father.

2. The son was indebted to his father on a bond and mortgage for $2,500, given for part of the purchase-money of a lot of land. This mortgage the father surrendered to the son for cancellation for certain alleged accounts which the son claimed he held against his father, the greater portion of which, if they existed in the form of accounts at all, were prior to the execution of the mortgage.—*Held*, fraudulent.

3. After these events, the wife of the debtor conveyed her interest in dower in the farm to her son and took from the son a mortgage on the farm for $1,000, the alleged price of the dower, which sum, in consideration of her age, if her husband had been dead, was more than twice its value.—*Held*, fraudulent.

4. The debtor was executor of his father's will, by which he was directed to secure a legacy of $2,047.62 upon the said real estate to his sister and her children, legatees; he took the mortgage named above to himself as executor and trustee, to secure that sum, in which it was expressly declared that it was in execution of the power and in favor of the trust, without the knowledge of the *cestuis que trust.*—*Held*, good as against creditors.

*Mr. Martin Wyckoff* and *Mr. W. H. Morrow*, for complainants.

*Mr. James H. Neighbour,* and *Mr. J. G. Shipman,* for defendants.

*Mr. Jos. Alward,* for defendants Martin & Smith.

BIRD, V. C.

These are creditors' bills. One prays that the conveyance of the title to a farm and the execution of two mortgages thereon may be declared fraudulent and void as to the creditor represented by the receiver; and the other, that the surrender and cancellation of a mortgage for $2,500 by the same parties may be declared fraudulent and void. The conveyance of the title, the execution and delivery of the two mortgages first named, and the surrender and cancellation were parts of one transaction; and for this reason I consider both cases at the same time.

About thirty years ago, George Cummins, the father of the defendant Johnson J. Cummins, and the grandfather of the defendant George O. Cummins, made his will, and devised to his son Johnson J. the farm in dispute, requiring the son to pay into his estate a certain amount of cash, and directing that that amount should be secured by bond and mortgage on that farm, or some other, for the benefit of the legatees named in the will. One of the legatees was a daughter, Mrs. Buckley, who was given the interest of one-seventh of the residue for her life, and whose children were entitled to the one-seventh at her death. The testator died soon afterwards. The defendant Johnson J. was named in the will as one of the executors. He joined in proving the will and in settling the estate. The amount upon which Mrs. Buckley was entitled to interest was about $2,047. Mrs. Buckley and her two children have been let in to make defence to the assault made against one of the mortgages given by George O. to his father to secure that sum.

At the time of the transaction complained of, Johnson J. was the owner of considerable personal property besides the $2,500 mortgage, and also of the farm named. The father had owned a village lot on which the son, George, had lived for some years prior to August, 1874, at which time the father conveyed the lot

to the son, George, for which he took back from the son, as part of the consideration, the mortgage of $2,500 above named, and a note, drawn by the son, for $200.   There are several endorsements on the bond which the mortgage secures, showing that the interest had been paid up to November 23d, 1881.   Then follows an endorsement in these words :

"Received, Dec. 29th, 1881, twenty-four hundred and forty-four 51-100 dollars on the within bond,"

Signed by Johnson J., but which was not written there until July 15th, 1882.

On this 15th day of July, 1882, the defendant Johnson J. was indebted to George W. Barber, at whose suit the receiver was appointed, over $3,000, and to the First National Bank of Clinton, over $1,000, and to Phebe A. Wood, $3,500, on a mortgage given to her for that amount the day before, and to his sister the interest on $2,047, and the $2,047 to her children at her death.   George O. says he knew that his father was embarrassed, and that he showed him a letter from the attorney of Barber, in which suit was threatened.

On that same 15th day of July, Johnson J. executed and delivered a deed of conveyance, with full covenants of warranty and seizin for his farm, said to contain about one hundred and twenty-five acres, for the consideration as therein expressed, of $5,843.69, in which it is declared that the conveyance was made subject to the mortgage to Phebe A. Wood, for $3,500, and to the inchoate right of dower of the grantor's wife.   George did not assume the payment of the Wood mortgage.

On that same day, George O. gave back to his father, " Johnson J. Cummins, executor and trustee under the last will and testament of George Cummins," a mortgage, in which the consideration is expressed to be $2,047.62.   The condition in the mortgage is that said George O. shall pay—

"The yearly interest, commencing on the first day of April last past, on the said principal sum of $2,047.62, at six per cent., out of the said mortgaged premises (and not from any other fund), on the first day of April of each and

13

every year, from said first day of April last past, in trust for the use and bene-
fit of Elizabeth B. Buckley, for and during the term of her natural life; and
at the decease of the said Elizabeth B. Buckley, then to cause to be paid to
the said party of the second part, out of the said mortgaged premises (and not
from any other fund), the said principal sum of $2,047.62, in trust for the use
and benefit of the children of the said Elizabeth Buckley, in pursuance of the
devise or bequest to the said Elizabeth B. Buckley, then Elizabeth B. Martin,
and her children, in and by the last will and testament of said George Cum-
mins, father of the said Elizabeth, and the codicil thereto annexed;"

And also upon condition that said George O. might, at his plea-
sure, discharge said mortgage by payment, or re-invest the
amount named therein in some other manner.

There was no bond given to accompany this mortgage. George
O. avoided all personal liability.

On that same 15th day of July, Johnson J. endorsed on the
bond which he held against George O. for $2,500, secured by
mortgage given by George, a receipt for $2,444.51, dated, how-
ever, December 29th, 1881, less than $2 in money passing be-
tween them. And two days after, a further receipt for $19.79
was endorsed, which purported to be the balance in full of prin-
cipal and interest due; and the bond and mortgage were sur-
rendered; and the mortgage was canceled.

On the 7th of September following, Matilda W. Cummins,
the mother of George O., executed a release and quit claim of
all her right of dower in the said farm, in which her husband
joined. This conveyance purports to have been for the consid-
eration of $1,000. George O. executed a bond to his mother, to
secure to her the payment of $1,000, and also a mortgage on the
farm, to further secure the same.

The law requires that such transactions shall be both *bona fide*
and for a valuable consideration. They will not be upheld if
either of these is wanting. *Bump. on Fraud. Conv. 240 ; Smith*
v. *Vreeland, 1 C. E. Gr. 198 ; Sayre* v. *Fredricks, 1 C. E. Gr.*
*205 ; Metropolitan Bank* v. *Durant, 7 C. E. Gr. 35 ; S. C., 9*
*C. E. Gr. 556 ; Heintze* v. *Bently, 7 Stew. Eq. 562.*

In my judgment, both of these fundamental principles are
wanting in this transfer. The son had knowledge of his father's
embarrassments, and also saw the letter written by the attorney

of the claim-holder, pressing payment. The most favorable case for the defendants I have met, is *Parker* v. *Conner, 93 N. Y. 118,* under which, I think, he would be clearly chargeable with notice.

Was a valuable consideration paid? The farm conveyed was worth about $6,000, and there was due on the mortgage surrendered, about $2,500, if not over $3,000. A day or two before the conveyance, the father, Johnson J., had given the Wood mortgage for $3,500. At the time of the conveyance, George O. executed the mortgage to Johnson J., as executor and trustee, for $2,047.51. I can find no other consideration. He did not give his father a dollar, nor become personally responsible for a dollar. He says he paid his father $200 in cash, but, at the same time, his father surrendered to him a note of $200, which the father had held since June 9th, 1875. He says this note was good for nothing, because outlawed, which principle he does not apply to his old, stale claims, as will be seen. He executed no bond with the last-named mortgage, and carefully stipulated that it should be paid out of the land only. If I understand the defendant George O., the consideration for the $2,500 mortgage, which his father surrendered to him, was accounts which he held against his father, and cash payments of small amounts. When it is remembered that the mortgage was given in July, 1874, for part of the purchase-money of the lot it embraced, and that the items of account were for improvements in and upon that lot, and taxes paid prior thereto, as will next appear, the transactions seem to have no resting-place. George says that—

"The account for grading, flagging, curbing and improvements, for the year 1870, made the sum of $446.94, and that eleven years' interest was added thereto, amounting to the sum of $361.46; that the items for the year 1871 made the sum of $192.54, and that ten years' interest was added thereto, amounting to the sum of $134.77;"

To which he adds about $230 for premiums on insurance, and taxes paid by him, and interest, and all prior to accepting the deed for the lot and giving the mortgage. After he accepted the deed and gave the mortgage, he says he paid taxes on the mort-

gaged premises to an amount sufficient, with the interest, to make all the account reach the sum of $1,693.80. Thus he says the account stood on the 15th of July, 1882, the day on which his father conveyed the farm to him and surrendered the $2,500 mortgage. On this day, there was endorsed on the bond, though dated December 29th, 1881, $2,444.51, which, it will be perceived, is $750.71 more than the account, with interest on each separate item. How was that breach closed? George says that, prior to the purchase of the lot, in 1874, he had paid large sums of insurance to the Mutual Benefit Life Insurance Company, for Johnson J., and that it was agreed that that should be applied. His statement shows that all the items excepting eight, which make about $275, are for work done and money paid prior to the year 1875, when the mortgage was given. Why were not these matters taken into the account then? The inquiry need not be pursued further. Besides this, I think that $545 of the $610 item of interest endorsed on the bond, was without consideration. The son says that his father agreed to give him credit for that amount if he would pay a certain portion of interest then due, and would continue to pay the interest as it should accrue. As I understand the testimony, this transaction took place after the Barber claim was first created. If it could be sustained as a gift between father and son, it could not, being voluntary, as between them and creditors.

It was proved that Mrs. Cummins was fully apprised of her husband's financial troubles. Her effort, therefore, to avail herself of those troubles, to secure for herself $1,000 out of the very land which she releases, cannot be supported. She had, a few weeks before, joined in the execution of the $3,500 mortgage to Mary B. Wood. This left a margin of about $2,500 in the farm, out of which she takes a gross sum of $1,000, or two-fifths of the whole, and that, too, in the lifetime of her husband. Had her husband been dead, and her right as widow fixed, being old, $400 would doubtless be regarded as an ample sum in gross.

Therefore, the mortgage to her must be declared fraudulent and removed from the path of creditors.

Another interesting and important question remains. Do the

foregoing conclusions carry with them and sweep away the mortgage given by George O. to Johnson J., executor and trustee under the will of George, the father of Johnson J.?

It is urged that fraud impairs and pollutes alike everything it touches; that if part of a transaction is condemned because of fraud, no other part of it can stand. The case that comes nearest supporting this comprehensive doctrine is that of *Sayre v. Fredricks, supra,* decided by a chancellor of the greatest ability and experience. In that case, the debtor first gave a mortgage to Clark, and then a deed of the premises mortgaged to Conklin. It was charged that both were fraudulent. The answer alleged that the mortgage was given in trust to secure debts due from the mortgagor to the heirs of his father, and that the deed was in payment of a debt due from the grantor to the grantee. Whether there was any sufficient declaration of trust or not was one of the questions discussed, but the chancellor said: "The real question in the cause is whether the conveyances were made in good faith, or whether they were designed to protect the debtor's property from his other creditors, and on that account fraudulent and void." In that case, the court pronounced the deed fraudulent, as I have in this, and for like reasons.

In that case, the mortgage was given in terms to secure a debt of $1,248 due to the mortgagee. In this, the mortgage was given back to the vendor to secure a debt not due to him, but from him as a trustee. In that case, the instrument was silent as to any trust. In this, the trust is expressly declared, its origin pointed out and the rights of the *cestuis que trust* detailed. In that, the alleged trust arose out of a sale of land by the mortgagor, which had descended to him and his brothers and sisters, and the proceeds never accounted for, although eighteen years had elapsed since the sale. In this case, notwithstanding the real estate out of which the fund sprang had been converted about twenty-five years, yet there had been an accounting in the orphans court by which the amount due was definitely fixed, and the yearly interest had been paid yearly to the person entitled thereto for life; so that the statute of limitations cannot be applied, nor can the claim be regarded as in the slightest degree

a stale one, nor does the amount due rest in doubt or depend on contingencies.

In that case, it was decided that the mortgage was fraudulent and void as to creditors, because it was not given in *good faith.* I cannot reach the same conclusion in this case. The cases are as dissimilar as possible, as the foregoing brief recital shows. Besides, it must be considered that Johnson J. Cummins, when he procured this mortgage to be made to himself, was acting in the strict line of his duty; he did what he should have done years before; he did what the court would have required of him at any time, at the instance of the *cestuis que trust.* His act was the execution of a power explicitly enjoined upon him by the last will of his father, under which he became possessed both of the land and the money. The *cestuis que trust* were innocent parties. They participated not in the transaction and were without any knowledge of it until long after. Shall the court snatch this residue of the grandfather's bounty, thus falteringly and tardily secured, from those who have an especial right to call upon it for protection, because the other persons in interest designed an unlawful thing? No. I should think the court would rather feel itself obliged to say that in such cases the principle which controlled in *Roe* v. *Moore, 8 Stew. Eq. 526,* and in the cases therein cited, should govern. Johnson J. Cummins was the debtor, not his son George. George was used as an instrument by the father and trustee to perform an act of the highest justice. The transaction, as to these *cestuis que trust,* I regard as the act of Johnson J., the insolvent debtor and trustee, and think the language of the court, in *Micou* v. *National Bank, 104 U. S. 530, 543,* "and thus conferring upon an insolvent debtor the right of absolute choice among his creditors, the law does not require one who is at the same time father and guardian to discriminate against his own flesh and blood, to whom he is indebted as their trustee," may be aptly quoted and applied.

Speaking of the whole case, it is proper to remark that I have made no comment on many matters of detail, because, in my judgment, it would only add to proofs which I have regarded as abundant on which to rest an equitable decree.

Clinton Bank *v.* Cummins.

I will advise a decree that the deed of conveyance from Johnson J. Cummins to George O. Cummins, and the mortgage from George O. Cummins to Matilda W. Cummins, are fraudulent and void as between them and the judgment creditor, the First National Bank of Clinton, complainant, and that its judgment is a lien on the said lands, and that said lands are held by George O. Cummins subject to said judgments. I will not advise a decree declaring that the said deed is absolutely void, and must be set aside and for nothing holden ; that is not necessary in order to aid creditors (see *Smith* v. *Vreeland, supra*), but shall advise that the deed remain as a 'foundation for the mortgage executed, delivered and recorded to secure the moneys due to the *cestuis que trust.* I shall also advise a decree declaring the surrender and cancellation of the $2,500 mortgage fraudulent and void. The complainant in each case is entitled to costs.